IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **WILLIAM KELLY NOLAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | NO. 3:22-cv-00604 |
| | ) | |
| **JERRY SCOTT, et al.,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

William Nolan, an inmate of the Sumner County Jail in Gallatin, Tennessee, filed a pro se Complaint for alleged violation of his civil rights (Doc. No. 2) and an application for leave to proceed as a pauper (Doc. No. 1) in the Eastern District of Tennessee. The Eastern District granted pauper status, assessed the filing fee, and transferred the case to this District after determining that venue was proper here. (Doc. No. 4.)

The case is before this Court for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, 42 U.S.C. § 1997e.

### I. INITIAL REVIEW

**A. Legal Standard**

The Court is required to screen the Complaint in order to determine whether its claims are cognizable, or whether it (or any portion of it) must be dismissed because it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see id.* § 1915(e)(2)(B), 42 U.S.C. § 1997e(c).

The review for whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). This review only assumes that the *facts* alleged in the Complaint are true; allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are not accepted as true. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d

580, 583 (6th Cir. 2012). Thus, to state a cognizable Section 1983 claim, Plaintiff must allege (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff sues Sumner County Jail Superintendent Jerry Scott and correctional officer Sergeant Killman in their individual and official capacities (Doc. No. 2 at 2), claiming violations of his constitutional rights when he was placed in administrative segregation in the Special Housing Unit (SHU) of the Jail for 21 days in June–July of 2022. (*Id.* at 13–14.) During that 21-day stint in administrative segregation, Plaintiff was denied privileges including visitation and the use of a tablet, and was also denied access to his personal property, including legal paperwork and writing materials. (*Id.* at 13.) Also, Plaintiff had his inmate trust account suspended during this time, could not communicate with his defense attorney, and was subjected to the "terrible" conditions in the SHU. (*Id.* at 17–18.) Sergeant Killman was present at the time of Plaintiff's relocation to the SHU and executed a search of Plaintiff's personal property but provided no reason for the relocation, other than that it was "per Superintendent Jerry Scott." (*Id.* at 13.) At no time during Plaintiff's stay in the SHU was any explanation provided as to why he had been placed in administrative segregation, other than one guard's suggestion that the placement was nondisciplinary, "[a]nd that basically Jerry Scott had put [Plaintiff] there and it was up to Mr. Scott to let [him] out." (*Id.* at 15–16.)

On the last day of Plaintiff's segregation in the SHU, Jerry Scott came to Plaintiff's cell and asked him if he knew why he was in segregation. (*Id.* at 16–17.) Scott informed Plaintiff that he "had broken the rules by making money off the other inmates" in his pod in general population.

(*Id.* at 17.) Scott then directed that Plaintiff be released from segregation. (*Id.*) Plaintiff had his personal property returned upon being released from the SHU, but several items were missing, including items he had purchased from the Jail's commissary, a letter to his defense attorney that he never had the chance to mail, and other legal documents. (*Id.* at 13–14.)

Plaintiff claims that his procedural due process rights were violated when he was placed in segregation for disciplinary reasons without notice or a hearing, as required by the Sumner County inmate handbook "if an officer charges you with a violation." (*Id.* at 15.) He further claims that his placement in the SHU amounted to cruel and unusual punishment, due to the conditions in that unit and "the stress of not receiving due process[,] . . . not being able to write . . . to my family or attorney[,] . . . [and] especially not know[ing] why or for how long." (*Id.* at 18.) Plaintiff asserts that his "injuries are mental," including depression and anxiety for which he is medicated. (*Id.* at 5.) As relief, he seeks to be returned to the unit where he was housed before being placed in the SHU, and for "all of [his] personal property [to be] returned," or alternatively, that he be compensated $180 for the items that were taken. (*Id.*) He further seeks damages for every day he was subjected to the "mental anguish" of being housed in the SHU; removal of any restriction on his inmate trust account; and assurances that his unsent letter to his defense attorney will not be used against him and that he otherwise will not be subject to retaliation from any Jail employee. (*Id.* at 19.)

## C. Analysis

To state a claim for a procedural due process violation under Section 1983, a plaintiff must establish that he had a protected liberty or property interest, and that the defendants deprived him of that interest without first affording him adequate procedural rights. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). In the case of a convicted prisoner, protected liberty interests are limited

to freedom from conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and segregation for administrative reasons does not usually entail such hardship. *See Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998).

However, Plaintiff alleges that he was a pretrial detainee when the events described in the Complaint took place. (*See* Doc. No. 2 at 4.) Because detainees "ha[ve] not been adjudged guilty of any crime," they have a right under the Due Process Clause to remain free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–36 & n.16 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."). Assuming the truth of Plaintiff's allegations, he was placed in administrative segregation without being formally charged with misconduct—which would clearly have required that he be afforded minimal procedural protections case under both due process and, allegedly, the Sumner County inmate handbook (*see* Doc. No. 2 at 15)—and despite the fact that none of the ordinary reasons for placing inmates in administrative segregation (i.e., "protective custody; medical reasons; safety and security reasons and classification purposes") applied to him. (*Id.*) It was not until the end of his time in segregation that he learned that he had been placed there for a punitive reason: he "had broken the rules by making money off the other inmates" in his original housing pod. (*Id.* at 17.)

The Sixth Circuit has considered a factually similar case in which the detainee plaintiff was administratively segregated for eight days without being informed of the reason for the segregation, during which time he was confined to a small cell for 23 hours a day and deprived of access to the law library, mail, and telephone, and was only told "that he would be released once he 'ceased causing problems.'" *Martucci v. Johnson*, 944 F.2d 291, 293 (6th Cir. 1991). The Sixth

5

Circuit liberally construed the pro se complaint in *Martucci* "to challenge both the conditions of his confinement under the due process clause and *Bell v. Wolfish*, as well as the process by which he was separated from the general jail population and subjected to segregated incarceration." *Id.* at 294. As to the first challenge, the court found that segregation under the conditions alleged by the detainee did not amount to impermissible punishment. However, this finding rested on the summary judgment proof of the reason for Martucci's segregation: a TBI agent's report to his jailers that Martucci was planning an escape from the jail. *Id.* at 293–94. The Sixth Circuit concluded as follows:

> Because the conditions imposed on Martucci during the eight days of his segregated confinement were "reasonably related to [the] legitimate governmental objective" of aborting his escape and insuring his presence at trial, *see Bell v. Wolfish*, 441 U.S. at 535, 99 S. Ct. at 1872, segregation did not, under the circumstances, amount to unconstitutional "punishment." Because it did not amount to punishment, Martucci's placement in segregated confinement did not, in and of itself, violate principals of due process as applied in the context of pre-trial detention. *Id.*

*Martucci*, 944 F.2d at 294. The Sixth Circuit further concluded that Martucci could not establish a state-created liberty interest upon which to claim the denial of procedural due process, inasmuch as the applicable Tennessee regulations do not mandate written notice and a hearing prior to "the imposition of *administrative* segregation, but refer only to disciplinary or punitive segregation." *Id.* at 294–95 (emphasis in original). In sum, the court found no merit in Martucci's due process claim because "he was reasonably placed in segregated confinement for what amounted to purely administrative reasons[.]" *Id.*

Following *Martucci*, this Court liberally construes the pro se Complaint to mount a due process challenge involving both the punitive conditions of Plaintiff's segregated confinement and the denial of procedural protections in placing him there. Yet this case is distinguishable from *Martucci* on both fronts, in that Plaintiff's segregation was allegedly ordered in response to his

violation of jail rules, rendering it more obviously disciplinary "in the germane sense of the term." *Id.* at 294–95 (distinguishing between segregation which is disciplinary, such as "[w]hen a prisoner is subjected to segregated confinement in response to an alleged rule infraction," and segregation for administrative reasons such as "preserving institutional security and insuring [inmates'] presence at trial"). The Court finds that, at this early stage of the proceedings and liberally construing the Complaint in his favor, Plaintiff has plausibly alleged a due process violation based on punishment at the hands of Defendant Jerry Scott, which was implemented without affording Plaintiff the minimal process due in prison disciplinary proceedings—i.e., "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." *Tate v. Quintana*, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974)). This due process claim will proceed for further development against Defendant Scott, both in his individual and official capacity.

Regarding official-capacity liability, Plaintiff specifically alleges that Scott, as the Sumner County Jail Superintendent, "has been given control over me and my incarceration by the Sheriff of . . . Sumner County[.]" (Doc. No. 2 at 4.) This and other allegations of the Complaint support, for purposes of initial review, the reasonable inference that Scott exercised ultimate policymaking authority in placing Plaintiff in (and releasing him from) administrative versus disciplinary segregation and is therefore properly sued in his official capacity as a stand-in for his employer, Sumner County. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003), and "a broader claim concerning the custom or policy of a municipality" such as Sumner County may be supported by allegations that "implicate the conduct of a defendant supervisor insofar as he acted . . . in his official capacity as a policymaker." *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

Conversely, Defendant Sgt. Killman is merely alleged to have executed Scott's order to physically relocate Plaintiff to the SHU, and to have conducted a routine search of Plaintiff's property in the course of the relocation. (Doc. No. 2 at 13.) Because no plausible claim of a constitutional violation is made against Killman, he will be dismissed as a defendant. The Court will also dismiss the Sumner County Jail as a defendant, inasmuch as the Jail is not an entity subject to suit. *See*, *e.g.*, *Lebeau v. Garert*, No. 1:17-CV-33-CLC-SKL, 2019 WL 2438777, at *2 (E.D. Tenn. June 11, 2019) (county jails "are not municipalities but buildings" and therefore are not suable as "'persons' within the meaning of § 1983"). Moreover, even if the naming of the Jail as a defendant could be construed as an attempt to pursue relief against Sumner County itself, such a claim to municipal liability for Plaintiff's alleged due process violation is already asserted here.

The Complaint does not contain any viable claims other than the due process claim discussed above. Aside from supporting his claim of unlawful punishment, Plaintiff's bare allegation that the conditions of his confinement in segregation were "terrible" (Doc. No. 2 at 18) cannot be liberally construed as stating any other claim. *See Iqbal*, 556 U.S. at 678 (plausible claims depend on pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Nor can his allegation of a temporarily frozen inmate trust account or the loss of a letter to his defense attorney be liberally construed to support any additional claim. Plaintiff cites the loss of his attorney letter and other legal documents as a source of mental distress but does not allege that his defense in his criminal case was prejudiced, either as a result of the loss of these documents or the ability to correspond with his attorney or family for 21 days. *See Mallory v. Miller*, No. 3:20-CV-P249-RGJ, 2021 WL 964955, at *5 (W.D. Ky. Mar. 15, 2021) (denying leave to amend complaint to include constitutional claim based on interference with detainee's communication with defense attorney

because detainee did not allege resulting prejudice to his defense) (citing cases). Finally, Plaintiff cannot claim in this Court that his constitutional rights were violated because of the loss of his personal property without also establishing the inadequacy of state post-deprivation remedies for such loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985). No such allegations are made here.

## II. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has stated a nonfrivolous claim against Defendant Scott. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (blank summons and USM 285 form) for this Defendant. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **21 days** of the date of this Order. Upon return of the completed service packet, **PROCESS SHALL ISSUE.**

All other claims, and Defendants Killman and Sumner County Jail, are **DISMISSED** from this action.

The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE